**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANNETTE SLOAN,

     Plaintiff,                    Case No.

v.                               Hon.

EDEN FOODS, INC.,

     Defendant.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Annette Sloan ("Plaintiff"), by and through her attorneys, Hurwitz Law, states the following for her Complaint against Defendant Eden Foods, Inc. ("Defendant"):

## PARTIES AND JURISDICTION

3. Plaintiff is an individual residing in Adrian, Michigan.

4. Defendant Eden Foods, Inc. is a domestic profit corporation with its headquarters located in Clinton, Michigan.

5. Federal question jurisdiction over claims arising out of the Fair Labor Standards Act of 1938 ("FLSA") is proper under 28 U.S.C. § 1331.

6. Venue is proper in this Eastern District of Michigan pursuant to 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events or omissions giving rise to the claims occurred.

## GENERAL ALLEGATIONS

8. Plaintiff was employed by Defendant's Payroll Accountant.

9. Plaintiff had more than a decade of relevant experience in accounting and payroll when she was hired as Defendant's Payroll Accountant.

10. Plaintiff was responsible for preparing and processing bi-weekly payroll for all company employees, auditing records for accuracy, managing end-to-end payroll operations including wages, taxes, deductions, and benefits, and ensuring compliance with federal and state employment laws.

11. Plaintiff was also responsible for helping implement new procedures under the Michigan Earned Sick Time Act.

10. Plaintiff excelled in her role, and she received consistently positive performance reviews throughout her employment.

2

11.    Plaintiff's initial salary was approximately $68,000 per year, and her salary increased to approximately $78,000 per year because of her performance.

12.    Plaintiff was rated "Meets Expectations" or "Exceeds Expectations" in multiple categories in her most recent performance evaluation form.

13.    Plaintiff's supervisor, Jonathan Turner, noted in the evaluation that she was "extremely knowledgeable in payroll rules and responsibilities" and that her "payroll knowledge is a great asset to the company."

14.    Mr. Turner added, "Annette knows her payroll responsibilities well and does an excellent job providing accurate payroll information . . . She has been very helpful through some big transitions this year and having a trustworthy, knowledgeable person doing payroll gives me one less thing to worry about."

15.    Plaintiff raised concerns to management about payroll practices that violated or potentially violated the Fair Labor Standards Act.

16.    Plaintiff identified and reported to members of management instances of improperly docking pay from salaried employees for partial-day absences, a practice that violates the salary basis requirement under 29 C.F.R. § 541.602.

17.    Defendant's President Michael Potter was also targeting an employee who intended to take protected medical leave.

18.     Mr. Potter was constantly questioning whether the employee was paying his portion of health insurance premiums, and he was informed by external legal counsel that payment should not be brought up to the employee.

19.     Mr. Potter was furious that he could not fire the employee.

20.     Plaintiff brought salary deduction concerns to management's attention on multiple occasions, including to Mr. Potter.

23.     Plaintiff discovered instances where employees' timesheets reflected unpaid hours owed to them due to improper payroll procedures.

24.     Plaintiff discovered that a salaried employee who had returned from leave was shown as owing four hours unpaid time.

25.     Plaintiff raised this issue and explained to management that the employee was entitled to be paid under exemption requirements.

26.     Plaintiff repeatedly brought systemic payroll compliance failures to management's attention, including Defendant's Vice President Sherri Laing.

27.     Plaintiff's complaints concerned conduct that constituted, or could reasonably be believed to constitute, violations of the Fair Labor Standards Act.

28.     Plaintiff had a belief that Defendant Eden Foods, Inc. was violating the Fair Labor Standards Act, and such a belief was objectively reasonable.

29.     Plaintiff's concerns were consistently ignored.

**Plaintiff's Email to Maureen Rouse-Ayoub**

30.     Plaintiff emailed legal counsel, Maureen Rouse-Ayoub, Esq., regarding salary deduction rules on October 7, 2025.

31.     Plaintiff copied her supervisor, Mr. Turner.

32.     Plaintiff wrote, in relevant part: "I need clarification on when employers are allowed to deduct for full day absences for salary exempt employees who have exhausted all of their vacation and sick time. My understanding is that pay cannot be deducted for partial day absences."

33.     Ms. Rouse-Ayoub responded by confirming that her interpretation of the salary deduction rules was correct.

36.     Mr. Turner summoned her to a meeting later that day.

37.     Mr. Turner warned her that she was "not allowed to send emails" to external counsel, according to Mr. Potter.

38.     Plaintiff had never been told prior to her email that she was prohibited from communicating with external legal counsel.

39.     Plaintiff had previously engaged with external legal counsel on the Michigan Earned Sick Time Act without any objection from anyone.

40.     Mr. Turner then invited her into his office for a call with Mr. Potter.

41.     Mr. Potter became aggressive and hostile.

42.     Mr. Potter accused her of lying.

43. Mr. Potter told her in a demeaning and condescending manner that she was "not qualified" to raise any concerns regarding payroll.

44. Plaintiff refused to tolerate the abusive treatment and left the meeting.

45. Later that day, she identified another employee whose attendance records showed she was owed twelve hours of pay.

46. Plaintiff attempted to bring this new issue to his attention to Mr. Turner. Mr. Potter was clearly unwilling to listen.

47. Mr. Potter yelled at her, "Get out of here!"

48. Plaintiff's coworker, Jenny Blumhardt, stopped her in the hallway to check on her because she was visibly distressed after the confrontation.

49. Plaintiff told her about the meeting and that she would be leaving early.

50. Plaintiff texted Mr. Turner, explaining that she could not tolerate being treated in such a hostile manner and being told she was "not qualified" when she had just received an excellent performance review.

51. Mr. Turner texted back, stating that he would discuss the situation with her in the morning, which never happened.

### Plaintiff's Termination

52. Plaintiff returned to work the following day, October 8, 2025.

53. Ms. Blumhardt approached her the next day to ask her how she was doing.

54. In the afternoon on October 8, 2025, less than twenty-four hours after her protected communication with external counsel, Ms. Rouse-Ayoub, she was told she was being terminated effective immediately.

55. Mr. Turner told her that the stated reason for her termination was that she had "slammed the door" when leaving the meeting the previous day.

56. Mr. Turner added that he did not want to terminate her.

57. Mr. Potter was the termination decisionmaker.

58. The only reason she was given was slamming a door. Plaintiff denies slamming any doors in a hostile or insubordinate manner.

53. Defendant now states that it also terminated her because she left early, "without notice of anyone."

54. Plaintiff in fact gave notice to Ms. Blumhardt.

55. Mr. Potter himself was known to slam doors almost daily according to multiple employees, yet he was never disciplined for this conduct.

56. Plaintiff, a salaried employee, had never been told that she needed to give advance notice to anyone to leave work early. Defendant's own policies do not require such permission for salaried employees.

57. Defendant's other employees were not disciplined for leaving work at similar times without formal advance notice.

58. Plaintiff raised concerns to management on multiple occasions prior to her email to Ms. Rouse-Ayoub.

59. Plaintiff had never been told prior to her email that she was prohibited from communicating with external legal counsel.

60. Plaintiff had previously engaged with external legal counsel on the Michigan Earned Sick Time Act without any objection from anyone.

70. Plaintiff had no history of disciplinary issues preceding her termination.

71. Defendant's Accounting Manager Greg Seidel resigned last year because of Mr. Potter.

72. Defendant now claims that "her interactions with other member of management were harsh."

73. Plaintiff never received any discipline for alleged harsh interactions.

74. Defendant has a progressive discipline policy.

75. Mr. Turner remarked once, "at times, tone of communication with other mangers needs to be softened," which does not constitute discipline.

86. Defendant's shifting explanations for her termination—first stating it was for "slamming the door," later stating it was for leaving early without notice and "harsh" interactions—demonstrate that the stated reasons are pretextual.

87. Plaintiff's termination was in direct retaliation for her protected activity under the Fair Labor Standards Act.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## RETALIATION–29 U.S.C. § 215

90.    Plaintiff incorporates by reference the foregoing paragraphs.

91.    Plaintiff was an "employee" within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203.

92.    Defendant is an "employer" engaged in interstate commerce within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203.

93.    It is unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to their chapter." 29 U.S.C. § 215(a)(3).

94.    Plaintiff excelled in her role, and she received consistently positive performance reviews throughout her employment.

95.    Plaintiff identified and reported to members of management instances of improperly docking pay from salaried employees for partial-day absences, a practice that violates the salary basis requirement under 29 C.F.R. § 541.602.

96.    Plaintiff brought salary deduction concerns to management's attention on multiple occasions, including to Mr. Potter.

97.    Plaintiff repeatedly brought systemic payroll compliance failures to management's attention, including Ms. Laing.

98. Plaintiff also emailed legal counsel, Ms. Rouse-Ayoub, regarding salary deduction rules, and copied her supervisor, Mr. Turner.

99. Plaintiff had a belief that Defendant Eden Foods, Inc. was violating the Fair Labor Standards Act, and such a belief was objectively reasonable.

100. Plaintiff thereby engaged in protected conduct.

101. Defendant was aware of the protected activity.

102. In the afternoon on October 8, 2025, less than twenty-four hours after her protected communication with external counsel, Ms. Rouse-Ayoub, she was told she was being terminated effective immediately.

103. Plaintiff thereby suffered an adverse employment action.

104. Mr. Turner warned her that she was "not allowed to send emails" to external counsel, according to Mr. Potter.

105. Plaintiff had never been told prior to her email that she was prohibited from communicating with external legal counsel.

106. Plaintiff had previously engaged with external legal counsel on the Michigan Earned Sick Time Act without any objection from anyone.

107. There was a causal connection between the protected activity and the adverse employment action.

97. Plaintiff would not have been terminated, but for her protected activity.

98. Defendant's stated termination reasons are pretextual.

59.     The only reason she was given was slamming a door. Plaintiff denies slamming any doors in a hostile or insubordinate manner.

61.     Defendant now states that it also terminated her because she left early, "without notice of anyone."

62.     Plaintiff in fact gave notice to Ms. Blumhardt.

99.     Defendant's shifting explanations for her termination—first stating it was for "slamming the door," later stating it was for leaving early without notice and "harsh" interactions—demonstrate that the stated reasons are pretextual.

100.    Defendant's conduct was intentional or willful.

101.    Plaintiff is entitled to lost wages, lost benefits, liquidated damages, extreme mental and emotional distress, humiliation, outrage, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive damages, interest, attorneys' fees and costs, and any other remedies available at law or in equity.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff requests the following relief:

A.    Declaratory judgment;
C.    All costs and reasonable attorney's fees;
D.    Compensatory and exemplary damages;
E.    Punitive damages,
F.    Prejudgment interest, and
D.    All further relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

11

12

/s/ *Kara F. Krause*
Kara F. Krause (P85487)
Noah S. Hurwitz (P74063)
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
kara@hurwitzlaw.com
noah@hurwitzlaw.com

Dated: March 17, 2026

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANNETTE SLOAN,

     Plaintiff,

v.

EDEN FOODS, INC.,

     Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiff Annette Sloan, by and through her attorneys, Hurwitz Law PLLC,

hereby demands a jury trial in the above-captioned matter for all issues so triable.

     Respectfully Submitted,

     /s/ *Kara F. Krause*
     Kara F. Krause (P85487)
     Noah S. Hurwitz (P74063)
     *Attorneys for Plaintiff*
     340 Beakes St., Suite 125
     Ann Arbor, MI 48104
     (844) 487-9489

Dated: March 17, 2026

13